'Chief Justice Robertson,
delivered the opinion of the court.
This is a suit in chancery, by theappel-lees'against the appellants, on conflicting “entries.’’
The appellees claim under William Hays. The appellants hold chiefly under a patent to Jeremiah' Moore.
The entry of* Hays was made in 1783, but was never surveyed until September, 1800, when a survey was made under the authority of an act of assembly, passed .during the session of 1799, 1800. The patent issued' jn 1813.
Moore’s survey was made in 1784, and his patent is :sued in 1785. His entry is not exhibited.
Hays djed in 1804, leaving infant children who in-'berited.his estate, and all of whom, except the appellee, Mahala Hays, sold and conveyed all their interest in the land in controversy, to the appellee, William Chiles, jn the year 1817.
Owner-of an entry surveyed ai’tefr the veyLg entries generally, coming into equity for relief, must with th“ law, within some, of its reservation
This suit was brought in 1821.
The appellants rely principally on two grounds.
1st. That the survey of Hays was not made within the time required by law, and that therefore, his entry cannot be enforced against their prior legal title. .
2d. That the suit is barred by the limitation of either twenty, or seven years.
As the whole case will be effectually decided'by disposing of the grounds thus assumed, we shall deem- it unnecessary to consider other important points present-ed in the record.
1st. The question on “the compact,” discussed in the case of Hoy’s heirs vs. McMurry, et al. does not arise in this case. If Hays labored under any disability provided for by the Virginia statutes-prescribing limitations to the time of making surveys, or if he did every thing that those acts injoined on him, and the delay in making the survey resulted from the delinquency of the surveyor, his entry might not have become void, although Kentucky had never prolonged the time for surveying, or-even if it be admitted that her statutes passed for that purpose were unconstitutional. Nor does the survey of Hays, derive any sanction, from these Kentucky statutes for indulgence.
The utmost time allowed by them for making the. survey, expired on the 1st of October, 1798. It is not material, therefore, whether they be valid or invalid^ for as the survey was made since 1798, whether, when it was made, theentryhad becomevoid ornoi,must depend exclusively on the laws of Virginia, in force at the date of “the separation.” ■ Consequently, as the construe: tion of the fourth article of “the compact” is not necessarily involved in this case, it would be premature and extra-judicial to express our opinion on a question which has been often discussed, but is yet, (in this court) unsettled.
As the survey of Hays was not made since 1798, it was incumbent on the appellees to show that, when made, it was authorized by law.
This could be done only by showing, either that the entry had not become void, oi that the statute of 1809, rescued it from the the consequences of its. forfeiture.
Lando .which escheat to the common. fécfaheredis™ pr Which are forfeited to payment^f. táxés,' or- " which, qre re-horqbyhthoso who had, ap-propriat.eá subject3ton0t entry under a general law tin lamil000,1 By relinquish-m£R)trfeTiCreat for non-pay-mvnt of taxes, * c^rS^ai o' ySaserhall the right’of pwne°i-™?r She holds it just as fi rnight nor is the land, in such case, vacant.
The appellees have not attempted to show, nor did they even a^e§et that the statute of 1785, did not render the entry void. It has not eveabeen intimated, that Hays labored under any saving disability, or had done what the act of 1785 required him to do. And this court - has frequently decided, that in such a case as this, allegations and proof to that effect are indispensable to save, the entry from forfeiture; see Shield’s heirs vs. Bryant, II Marshall, 244.
The effect of the act of 1800, will depend on the prop' er construction of the acts of 1784-5.
It is well settled that lands which escheat to the com-momvealth “pro defectu heredis,” or which are forfeited to her by the non-payment of taxes or instalments, or which are relinquished to her by those who had appro-Priated them, are not subject to entry under a general law for appropriating vacant lands. And it is equally well settled, that if, in any such case, the forfeiture be remítted, °T the land be re-granted by the commonwealth, the title so vested, will attach, by relation, to that which had reverted, and will, if that had been ya^ an<* Paramount> entitle such grantee to the land, against all pre-existing claims, and will, at all events, avoid all intermediate appropriations under the general These doctrines-are consistent and reasonable, By relinquishment or escheat, or forfeiture, for non-payment, the commonwealth acquires, as a purchaser, all of the former ownfer. Shq holds the title, just as a natural person might hold it. The land is not considered as vacant; and, therefore, aq attempt to apProPriate R as vacant land, without special authority, will be ineffectual. And if it be authoritatively re-granted, the grantee will hold it, as the commonwealth ■ ^ an<^ therefore, will be entitled to all the right wlfich the first owner had, before it relapsed to the commonwealth.
In such case, when the title reverted to the commonwealth, it did not enure to the benefit of claimants who obtained grants for it, under the general law for appropriating the vacant lands; because, in such appropriations, the government is passive, and the doctrine of estoppels does not apply to a sovereign. Fraud cannot be imputed to the commonwealth, nor is there, in her grants, any warranty of title, express or implied.
*613 These principles are established by express authority; see Wilcox vs. Calloway, I Washington, 38; Elmendorf vs. Carmichael, III Littell’s Reports, 481; Stith vs. Hart’s heirs, VI Monroe, 628; Fletcher vs. Peek, VI Cranch, 87; and Governeur’s heirs vs. Robertson, XI Wheaton, 332.
But these authorities do not necessarily apply to this case. For failing to have his survey made in proper -time, Hays forfeited his entry. But the commonwealth' did not thereupon take the land, as a purchaser. The title did not escheat, nor was it relinquished to the state,•nor forfeited to her for non-payment.
The entry became “void,” and thereupon the land was rendered “vacant,” so far as the. entry was concerned. , Kentucky succeeded to all the rights of jurisdiction and ,of soil which belonged to Virginia' before the separation. Upon .the vacation of Hays’ entry, therefore, Kentucky had all the rights that Virginia would have had, and no more. If the title would not have vested .absolutely in Virginia, it has not so vested in Kentucky. When she declared that entries should become void, unless they should be surveyed within the- prescribed time, Virginia had the right to declare what should be the effect of such a forfeiture. If she had made no .declaration on this point, the consequence would have-been, that the forfeiture would have enured to- the- ben-,eiit of any person who had appropriated the same land by an entry posterior to that which had been forfeited, but prior to the date of the forfeiture, and which had not been forfeited. This would have been the admit-, ted consequence, unless such junior claim should be. considered not void. If it be not void, it must be good against the commonwealth; and would be good against the world, as soon as the prior and paramount title had become void. By becoming void, the entry could, not vest in the commonwealth as a purchaser of the claimant who had forfeited it, nor even as his successor, any right; and therefore, the commonwealth acquires no right to the land, unless it be vacant, or be considered as vacant.
The grant to Moore was not void; as between him and the appellees, it vested in him the legal title to the land; and, as between him and the commonwealth, it *614 vested in him all her title It was liable to be invalidated by the claim of Hays, if the latter was superior to in equity'. Rut with tins qualification it guarantied to the grantee, a perfect and indefensable legal tide. If such a grant be void, merely because there was a prior equitable appropriation of the land by Hays, then it would never be necessary for the junior paten-tee to file his bill in chancery, for a release by the' elder patent of his superior legal right. ’ Such release would impart no title; nor would a bill in chancery be necessary or proper, because the junior patent could show, in a trial at law, the invalidity of the elder grant. Even a junior grant would not be void, merely because an elder patent had issued for the same land, to some other person than the junior grantee.
It would be good against the commonwealth, unless, as an individual, she should acquire the title of the elder grantee.
It seems to us therefore, that the instant when the entry of Hays became “void,5’ Moore’s title was good and superior as against Hays and the commonwealth, unless there be some positive law to the contrary,. Such law we have not seen. On the contrary there is, according to our construction, statutory law which destroyed the equity of Hays, and asa consequence of its extinguishment, remitted the whole tide to Moore.
Two statutes of Virginia to this eiFectwill.be noticed. They have never been repealed. One is an act of 178 \; the other is an act of 17c5. They are the acts which denounce a forfeiture for delay, in surveying.
The act of 1781 (I Litt. 551) declares, that-“if any entry shall notbe surveyed and returned within theterms aforesaid, it shall be lawful for any person to enter for, and locate the said lands, ire like manner, as if such pri- or entry ha l not b '.en made;” as a penalty for not complying with its i c'qubitions, as to surveying, &c. the act of 1/85 declares, t..at “such entry shall become void, and the lands liable to be again entered for, by any person holding a land warrant; and the surveyor shall return the warrant on which such entry was made: which may nevertheless be located on any was.e or unappropriated lands, or on the same lands, if not already taken by some, other warrant”
After an entry has become void under the act of 1784 and 1785, a subsequen t entry by tfio former claimant or any other person will not attach to the vi id entry by relation, but must depend upon itself. Such ubse-cqutnt entry on the same land, made prio' to the avoid mee o'f the primitive entry.-
it is evident, that the legislature of Virginia did not intend that the commonwealth should hold the forfeited title, as she would hold titles forfeited for non-payment; , but that they intended on the contrary, that when an ■ entry had become void, the land appropriated by it, should be just as vacant and as liable to appropriation as if such entry had never been made; and that, con-secpiently, any individual claimant of the same land, and whose claim had not been forfeited, skoald have the same right to the land as he would have had, if the void entry never had been made.
It seems to us very evident, that under these statutes, the commonwealth had the same right to the land, as that winch she would have had, if the void, entry had never been made, but no other or better rignt.
The acts were passed not so much for the benefit of’ the state, as for that of individuals who had junior entries, or who desired to make entries on lands which had been previously appropriated by entry. Therefore, when entries became void, the lands appropriated by them did not, under all circumstances, enure to the benefit of ■ the state.
They werenotio be held up as lands forfeited or escheated to the stale, but were to be vacant and app. opriable in the same manner as they would have been, if the void entries'had never been made. If, after the iiist entries had been void, oilier en.ries had been made on the same lands, either by the former claimants, or by other persons, these last entries would not have attached to the void ones, by relation, but would have depended on themselves alone.
They would not therefore, overreach prior entiles made be fore the forfeitures, and w'hich entries had not been forfeited.
Any person whose entry had become void, was allows ed, without'any ticzv consi lera lion, to re-enter the same land, unless it had been “already taken by some other warrant.” In the exvntofsnch re-entry, the commonwealth would not be benefitted by the forfeiture.
It cannot be supposed, that the legislature intended that any claimant who had, for a full consideration paid to the state, entered, and in proper time, sur *616 veyed land, and had obtained a grant for it, should yield up his claim, to an individual who had forfeited . his right, and had afterwards entered his original warrant on the land, without paying any new consideration. It cannot be materia], whether such claimant had made his entry before or after the forfeiture. In either case, he had paid for the land, and held the patent of the commonwealth; and in either, he is included in the expressions, uif not already taken by some other warrant.” Although the commonwealth is not bound by contract or law for the title to land which she has granted, nevertheless she is under a strong moral obligation to let the grantee enjoy it, so far as her title or power may be concerned.
We must presume, that the commonwealth of Virginia, knew how to estimate this moral duty; and therefore, if the language of the act of 1784 — 5 were even ambiguous, we should construe them-as we have -done.
If this construction be not the proper’ohe, those who-have argued that the extension by Kentucky, of the time allowed by Virginia, for surveying Virginia entries, contravenes the 7th article of the compact, would not have had even the substance óf a pretext for the opinions which they have endeavored to maintain. For, as is admitted in Hoy’s heirs vs. McMurry, if the forfeiture of entries, for failing to survey within the prescribed time, was not intended for the benefit of other claimants of the same land,but was considered as 'enuring to the benefit of the commonwealth exclusively, Virginia, when she was ceding her right of domain to Kentucky, could have had no motive for exacting from Kentucky a pledge, that she would take advantage of ■the act of 1785, and enforce its penalties in her own favor, and for her own advantage. Such a requisition would be ridiculously absurd. If, therefore, the compact be violated by the acts of Kentucky, for prolonging the time of surveying, the inevitable consequence is, that the forfeitures enure to the benefit of adversary claimants.
We do not mean to intimate, that it is our opinion, that the compact has been violated. On this subject, 'we have no right now to adjudicate. But as there has *617 usen a diversity of opinion in relation to it; and the diverse opinions have been defended wifch zeal and confidence, the infeience is fair, that, on all sides, it mast have been conceded that the object of the compact was to protect privat; right;, as otherwise, there was ho ground for argument, or for any difference of opinion.
The gene-al and practical construction of the act of 1785, therefore, seems to have been, that the forfeitures enured to the benefit of conflicting claims; and it was •to show this fací, that we have said thiit-the compact could not be violated, if the forfeitures vest the rights in the commonwealth, as they would do for non-payment of taxes.
The act of 1785, not only did not declare that the entries should be forfeited to the commonwealth, but it has not even said that they should be forfeited. It has said only that the entries should ilbz void,” which means, that such claims shall be extinguished, and have no more ■effort, than if they had never existed.
This view is decisive of the merits of this case, sb •far as Moore’s patent is concerned.
The entry of Hays having become void before his survey was made, the title of the appellees is invalid, and that of the appellants, is valid. The statute of 1800, for authorizing the survey, can have no effect. If Moore’s title had become perfect, the actof 1800,did 'not divest nor affect it.
If the legislature had intended to give the land to Hays, they could give him only the right of the com'monwealth. Hays made no new entry, lie relied on his void entry. If the land had been vacant, the act of 18JO, would have vested the right in Hays; but as it was not vacant, the only legal effect of that act, was to enable Hays to make his survey and obtain a patent, neither of which could have been done without its authority.
After the entry had becoihe void, tlie legislature could not give it validity against the vested right of Moore; but only as agaiust the commonwealth.
Hays derived all the right he had, from the act of 1800. The legislature could not grant the land to him. *618 so as to interfere with the prior grant by Virginia, to Moore.
The 9th arlicle of the compart, secures Moore’s grant from competition with any such appropriation by Kentucky, of the same land.
The appellants have not exhibited any entry, nor have they positively proved that there ever was one. But this, though an inexcusable omission, if there was an ■entry, is not now material. The legal title is sufficient to defeat the claim of the appellees; and to protect the appellants under the 9th article of the compact.
Moore having the legal title, cannot be affected by an entry which was void, and which, having been once void, must, as to him, ever remain so. Besides, as it has not even suggested, that Moore had no entry, we ' must presume that he had, as otherwise, he could not have procured a patent, without an incredible breach of duty by the surveyor and register. And moreover, the appellees virtually admit, that he had an entry, when, they say, that “his entry was invalid.”
But if the grant to Moore had issued without warrant or entry, it cannot be revoked for that cause, by Kentucky, although it might have been nullified by V ir-ginia. The compact forbids the exercise of any such power. ,The patent vested the legal right to the land in Moore. Virginia might have reclaimed that right; she did not do so; but obtained from Kentucky a pledge, that it should remain secure. It is not material, therefore, whether Moore had made a valid entry or not.
The act of 1800 could not be allowed to operate so ■as to affect his vested legal right; see McCracken vs. Beall et al. III Marsh. 208.
A small part of the land, not covered by Moore’s patent, is claimed by the appellants, under a patent to Sears (for five hundred acres) issued by Virginia, in 1786. For some of the foregoing reasons, this patent must protect the appellants, as far as they claim to hold under it.
But there is also another small portion of the land in controversy, to which the appellants have not pretended to have any other title-.than one which they claim to have derived from Turpin and Cremp, who obtained *619 á patent for it in 1812, from the commonwealth of Kentucky, Their entry has not been shown, nor is there any proof in relation to it, except that the patent recites that there was an entry made in 1783.
As to so much of the land as is claimed by the appellants under the patent to Turpin and Crump, the ap-pellees seem to be entitled to a decree. The entry of' Hays vested in him the equitable right to all the vacant land which it covers; this equity accrued in 1800, prior to the date of the patent to Turpin and Crump. It is not shown, that Turpin and Crump had even an equitable right in 1802, to any of the land now in controversy. Although the recital in the patent, and the presumption, that the register did his duty may he,prima facie, sufficient evidence to prove that there was an entry, and that therefore, a patent was authorized; nevertheless, there is no evidence tending to show that the entry was such as to -give to its holders the equitable right to any of the land now in controversy. Therefore, as it does not appear that Turpin and Crump had any right whatever, to any particular spot of land, covered by the entry of Hays in 1800, as between these • parties and those holding under them, the land must be considered as vacant, until it was appropriated by Hays in 1800; at least, it does not appear that the act of 1800 affected any vested right, And, therefore, to this extent, there is no valid objection to the title of the appellees.
They have shown an equity, commencing in 1800, because no opposing equity appears. The subsequent patent to Turpin and Crump, must, therefore, yield' to this, only equitable right, which has been shown to the land. As to so muca of the land claimed by the appellant Jones, under Turpin and Crump, as is designated on the plat by the boundary, 2, 3, 8, 9, he has shown no title whatever. He says he holds under Turpin and Cramp; but there is no proof that he does.
2d. As to so much of the land as is included by Moore’s and Sears’s patents, it will be unnecessary to notice the facts relied on, for barring the appellees by time. And as to so much as the appellant’s claim under Turpin and Crump, neither the limitation of twenty, nor that of seven years, can avail.
Tripletts for appellant; Mills and Brown, for appel-lees.
There is no pretence for claiming twenty years adverse possession. And the seven years limitation does not apply, because there is no evidence of an actual settlement for seven years prior to the institution of this suit, nor of any settlement whatever. But the counsel for Cue appellees was mistaken in supposing that, if there had been an. actual settlement for seven years preceding the suit, the infancy of one of his clients would save their right to sue. They did not notify the appellants, by replication or otherwise, that tlie're was any such saving disability.
The appellants could not be benefitted by the statute of limitations without pleading it; and if, when pleaded, it had been sustained by proof, the appel-lees could not have escaped, by proving that they, or either of them, labored under any saving disability, unless they had averred that disability. Proof without allegation, is as ineffectual as allegation without proof. This point has been directly decided by this court; see Reed, et al. vs. Bullock, Sel. Ca.
As, however, the equity of the appellees has been established for so much of the land in controversy, as is claimed by the appellants pnder Crump and Turpin and no other person; and as this equity is not barred by lapse of time, it was proper to decree a release to them, to this extent. But beyond this, the decree is erroneous.
Wherefore, the decree of the circuit court is reversed, and the cause remanded, for a decree to be entered conformable to this opinion.